### BLANKS v. HAZEN et al.

### No. 6623.

United States Court of Appeals for the District of Columbia.

June 8, 1936.

Raymond M. Hudson, Minor Hudson, and Geoffrey Creyke, Jr., all of Washington, D. C., for plaintiff in error.

E. Barrett Prettyman, Vernon E. West, and Edward W. Thomas, all of Washington, D. C., for defendants in error.

Before MARTIN, Chief Justice, and VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

## VAN ORSDEL, Associate Justice.

This suit was brought by plaintiff in error in the Municipal Court of the District of Columbia against the District Commissioners to recover back a license fee paid on premises No. 16 Third street, Southeast, in the city of Washington, as an apartment house, for the license year beginning November 1, 1932, and ending October 31, 1933. At the conclusion of plaintiff's case the court found in favor of defendants and entered a final judgment in accordance with his finding. Thereafter this court allowed a writ of error.

The tax was collected under the provisions of the Act of Congress approved July 1, 1932 (47 Stat. 550; sections 1701–1759, T. 20, D.C.Code Supp. I, 1933). Paragraph 29 of the act (section 1729, T. 20, D.C.Code Supp. I, 1933) provides as follows:

"Owners or managers of apartments [sic] houses shall pay a license fee of $15 per annum: Provided, That where the owner or manager maintains a restaurant on said premises the license fee shall be $18 per annum: Provided further, That if a restaurant is conducted on the premises by other than the owner or manager of the apartment house, the proprietor of such restaurant shall be liable for a separate restaurant license. Within the meaning of this paragraph [section] an apartment house shall be a building in which the rooms are occupied in suites by three or more families."

At the threshold we are confronted with the question whether plaintiff's payment of the license fee was voluntary or involuntary. Plaintiff testified that he paid the tax "under protest and the officer having told him if he did not pay it, he would be arrested." This is all the record discloses as to the circumstances under which the tax was paid. It is contended by the Commissioners that this constituted a voluntary payment, inasmuch as no protest was filed and no authority existed in the officer to make an arrest in the event of plaintiff's failure to comply with his demand. The mere statement that the tax was paid under protest is not sufficient to make it an involuntary payment.

In the case of Union Pacific Railroad Company v. Dodge County Commissioners, 98 U.S. 541, 544, 25 L.Ed. 196, the court said:

"The real question in this case is whether there was such an immediate and urgent necessity for the payment of the taxes in controversy as to imply that it was made upon compulsion. The treasurer had a warrant in his hands which would have authorized him to seize the goods of the company to enforce the collection. This warrant was in the nature of an execution running against the property of the parties charged with taxes upon the lists it accompanied, and no opportunity had been afforded the parties of obtaining a judicial decision of the question of their liability."

On this statement of the case, the court, in holding the payment voluntary, adopted the language of Wabaunsee County Com'rs v. Walker, 8 Kan. 431, and said:

"Where a party pays an illegal demand with a full knowledge of all the facts which render such demand illegal, without an immediate and urgent necessity therefor, or unless to release his person or property from detention, or to prevent an immediate seizure of his person or property, such payment must be deemed to be voluntary, and cannot be recovered back. And the fact that the party at the time of making the payment files a written pro-

test does not make the payment involuntary."

The court further approved the rule laid down by Chief Justice Shaw in Preston v. Boston, 12 Pick.(Mass.) 1, 14, as follows:

"When therefore a party not liable to taxation, is called on peremptorily to pay upon such a warrant, and he can save himself and his property in no other way than by paying the illegal demand, he may give notice, that he so pays it by duress and not voluntarily, and by showing that he is not liable, recover it back, as money had and received."

▮ There is nothing in the facts in this case to bring it within the rule, or to indicate any lack of knowledge on the part of the plaintiff of any of the facts which he now contends render the demand for the payment of the license fee illegal. He was not confronted with any urgent necessity for the payment of the tax. The officer had no warrant for his arrest, and he filed no written protest with the authorities. Indeed, the license fee was not paid until several months after the same became due and payable.

We think, therefore, that a consideration of the question of whether or not plaintiff's premises, upon which this license fee was paid, were a rooming house or an apartment house is unnecessary, since the voluntary payment of the tax precludes recovery.

The judgment is affirmed, with costs.

STEPHENS, Associate Justice (dissenting).

I think the payment of the license fee in this case was not voluntary but under compulsion and that, therefore, the plaintiff in error had a right to bring suit to recover it. Union Pacific Railroad Co. v. Dodge County Commissioners, 98 U.S. 541, 545, 25 L.Ed. 196, relied on in the majority opinion is, I think, distinguishable. There, "After all the taxes had become delinquent under the law, but before any active steps whatever had been taken to enforce their collection, the company presented itself at the treasurer's office, and in the usual course of business paid in full every thing that was charged against it, accompanying the payment, however, with a general protest against the legality of the charges and a notice that suit would be commenced to recover back the full amount that was paid. * * *" 98 U.S. 541, at page 545, 25 L.Ed. 196. It is true that in that case the tax list with warrants attached was in the possession of the treasurer, but there is nothing in the case to indicate that he had threatened immediate use of the warrants and that because of that the taxes were paid. In the instant case, according to the record, the plaintiff in error paid the license tax in question "under protest and the officer having told him if he did not pay it he would be arrested." It is not made to appear that the plaintiff in error knew that the officer did not have authority to make the arrest. This, I think, is a sufficient showing of duress.

On the merits of the case: I think the testimony falls short of bringing the building within the statute as an apartment house. The provision is: "Within the meaning of this section an apartment house shall be a building in which the rooms are occupied in suites by three or more families." Act of July 1, 1902, 32 Stat. 622, c. 1352, § 7; Act of July 1, 1932, 47 Stat. 555, c. 366, par. 29. District of Columbia Code for 1929, Supplement 1, Title 20, § 1729. It is possible to spell out of the testimony two suites occupied by families in the building, one on the third floor where two rooms with cooking facilities were rented to a man and his wife and child, another on the first floor where a room and a kitchen were rented to a man and his wife; but the third situation, also on the first floor, where "a young man paid the rent for two adjoining rooms, one for his mother and one for his aunt, and each room had cooking facilities," seems to me to be hardly possible of characterization as a suite. I take the phrase "adjoining rooms" in the ordinary sense of the word "adjoining," i. e., rooms side by side but not connected within. It seems to me to require too strained a construction of the words to say that, where each of two sisters (this relationship was conceded at the argument), lives in a separate room not connected, they are living in a suite merely because the rooms are adjoining.

I think, therefore, the judgment of the trial court denying right of recovery to the plaintiff should be reversed.